**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

RUDY MARTIN,

Plaintiff,

v. Civ. No. 26-00027 GJF/KRS

GRANTS CIBOLA COUNTY SCHOOLS, formerly referred to as Grants Cibola Schools, LANE WIDNER, SUPERINTENDENT, COURTNEY CLAWSON, MONICA SALAZAR, DR. GUY ARCHAMBEAU, FRANCIE LEE, and WALTER JARAMILLO, BOARD MEMBERS,

Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Rudy Martin ("Plaintiff") was a teacher employed by Defendant Grants Cibola County Schools (the "School District"). This case arises following the investigation of a complaint filed by two students alleging unlawful touching and unwanted statements by Plaintiff and the termination of his employment. Plaintiff, who is proceeding pro se,[1] filed suit against Board Members Courtney Clawson, Monica Salazar, Dr. Guy Archambeau, Francie Lee, and Walter Jaramillo (collectively, the "Board Members"), the School District, and Superintendent Lane Widner. Plaintiff alleges Defendants violated his due process rights when they terminated his employment without providing the pre-termination hearing he requested to cross-examine evidence and witnesses. He further alleges they discriminated against him because he was not Native American.

Defendants filed a *Motion to Dismiss All Claims of Plaintiff's First Amended Complaint* (Dkt. No. 7). Plaintiff opposes the motion. Pl.'s Resp. 1-2, Dkt. No. 12. Having considered the

[1] Plaintiff asserts that he was a practicing attorney for approximately 33 years, but his license has been on Inactive Status since 2015. *See* First Am. Compl. ("FAC") ¶ 12, Dkt. No. 1-2 at 91-100 of 107.

motion, response, reply, pleadings, and applicable law, the Court will grant the motion to dismiss in part. The Court will dismiss Plaintiff's federal claims but, in the exercise of its discretion, will remand the remaining state law claims to the Thirteenth Judicial District for determination by the state court.

## I. FACTUAL BACKGROUND

Plaintiff worked for the School District as a teacher on a contract for the fall semester 2022 through June 30, 2023. FAC ¶ 23, Dkt. No. 1-2. On or about February 16, 2023, two of Plaintiff's students complained that he unlawfully touched them and made unwanted statements to them. *See id.* ¶¶ 2-4. In response, the School District suspended him. *Id.* ¶ 3. The School District hired an attorney to investigate the allegations, and around March 1, 2023, the investigator contacted Plaintiff. *Id.* ¶ 4. A few days later, Plaintiff met with the investigator and responded to his questions. *Id.* ¶ 6.

On several occasions between February 16th and the date of termination, Plaintiff requested that the School District provide him with a hearing so he could cross-examine the witnesses and evidence against him and present his own witnesses to rebut the allegations. *Id.* ¶ 9. Lisa Salazar, the School District's Human Resources Director, refused to respond or grant Plaintiff an evidentiary hearing. *Id.* She also failed to follow disciplinary procedures for the handling of complaints and grievances as outlined in the employment contract between the School District and Cibola County Federation of United School Employees. *See id.* ¶¶ 13-14. Nor did Lisa Salazar comply with the School District's policies for Title IX investigations that required giving both parties an equal opportunity to inspect and review evidence, allowing both parties to present witnesses and evidence, and creating an investigation report at least 10 days prior to a hearing. *See id.* ¶¶ 15-17.

The New Mexico Public Education Department ("NMPED") separately investigated the students' complaint. *See* FAC ¶¶ 7, 28, Dkt. No. 1-2.[2] Plaintiff voluntarily answered all the NMPED investigator's questions. *Id.* ¶¶ 7-8. The NMPED issued Plaintiff a "NO Prosecution" letter regarding the complaint. *Id.* ¶ 28. Although the NMPED decision was readily available to the School District, the School District failed to consider it as controlling. *See id.* ¶¶ 28-32.

Instead, Lisa Salazar issued a final report with her recommendation for terminating Plaintiff's employment. FAC ¶ 18, Dkt. No. 1-2. The final report was rife with mischaracterizations, statements Plaintiff never made, and unsupported conclusions. *See id.* ¶¶ 18-19. Subsequently, Superintendent Widner by letter informed Plaintiff that he was terminated from employment at the end of the school year. *Id.*[3] The letter informed Plaintiff of his rights under N.M. Stat. Ann. § 22-10A-24(C) to request an opportunity to make a statement to the Board of Education to contest the grounds for his termination. *See* Letter, Dkt. No. 1-2 at 57 of 107.

---

[2] "Every local school superintendent … shall provide written notification to the director of the ethics bureau upon acquiring knowledge of purported facts reasonably believed by such notifying person to constitute grounds for suspension, revocation or other disciplinary action against an educator or administrator license." N.M. Admin. Code § 6.68.3.8(C)(1). Notification may prompt the NMPED to commence action to suspend, revoke, or take other disciplinary action against the school instructor's license. *See id.* § 6.68.3(A), (D).

[3] Plaintiff asserts in his FAC that he received Superintendent Widner's termination letter in April 2023, terminating his employment effective in late May 2023. *See* FAC ¶ 27, Dkt. No. 1-2. The record, however, shows a discrepancy as to when he was terminated. *Compare id. with* Compl. ¶ 22, Dkt. No. 3 (stating Plaintiff received letter of termination from Defendant Widner on or about April 27, 2024). When the case was before the state court, Plaintiff filed a sur-reply in opposition to Defendants' initial motion to dismiss. *See* Pl.'s Sur-Reply, Dkt. No. 1-2 at 45-53 of 107. He attached as Plaintiff's Exhibit 3 the Letter of Termination from Superintendent Widner. *Id.* at 47 of 107. Plaintiff asserted in the sur-reply that the letter is dated April 25, 2024, and that his termination became effective one month later, *id*, as the Notice of Termination letter itself reflects, *see* Pl.'s Ex. 3, Dkt. No. 1-2 at 57 of 107. The resolution of this decision does not depend on which date is correct. But the Court raises the issue because Defendants cite the contents of the Notice of Termination letter in their motion and assert that the Court may rely on it on a Rule 12(b)(6) motion to dismiss, because Plaintiff referred to the document and does not dispute its authenticity. Defs.' Mot. 19 & n.3, Dkt. No. 7. In his response, Plaintiff did not refute that the April 25, 2024, letter cited by Defendants was his termination letter, and he did not dispute its contents or that he received the letter prior to his termination. *See* Pl.'s Resp., Dkt. No. 12. Plaintiff referred to the letter in the complaint, it is central to the plaintiff's claim for unlawful termination, and the parties do not dispute the document's authenticity. Consequently, despite the date discrepancy between ¶ 27 of the FAC and the letter, the Court will consider the contents of the letter without converting this motion to one for summary judgment. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (explaining that court may consider documents referred to in complaint if documents are central to plaintiff's claim and parties do not dispute documents' authenticity).

## II. PROCEDURAL HISTORY

Plaintiff filed suit in state court on June 18, 2025, for employment discrimination based on race and national origin under the New Mexico Human Rights Act ("NHHRA") against Superintendent Widner, the School District, and Lisa Salazar; failure to supervise against Superintendent Widner; and defamation against Ms. Salazar in her personal and official capacities. *See* Compl., Dkt. No. 3.[4] Defendants moved to dismiss all claims for failure to state a claim, including failing to allege exhaustion of administrative remedies as to each instance in the complaint and as to each Defendant. *See* Defs.' Mot. to Dismiss, Dkt. No. 1-2 at 12-21 of 107. In opposition to the motion to dismiss, Plaintiff asserted that he exhausted administrative remedies by filing a complaint initially with the EEOC for unlawful suspension due to racial animus by Defendant Salazar. *See* Pl.'s Resp, Dkt. No. 1-2 at 25-26 of 107. According to Plaintiff, he amended his charge, the School District filed a response thereto with the New Mexico Human Rights Bureau ("NMHRB" or "NMHRD"), and he received a Right to Sue Letter in April 2025. *See id.* at 25-28. Plaintiff also filed a sur-reply, attaching a Letter of Determination—No Probable Cause dated March 20, 2025, issued by the NMHRB ("NMHRB Letter"). *See* NMHRB Letter, Dkt. No. 1-2 at 54 of 107. The NMHRB Letter noted that he submitted a Charge of Discrimination on April 22, 2024, for discrimination based on race, sex, and retaliation. *Id.* The NMHRB Letter notified him that he had 90 days to appeal. *Id.* at 55 of 107.

The state district court granted the motion to dismiss, dismissing his second and third claims brought under the New Mexico Tort Claims Act ("NMTCA") with prejudice but allowing Plaintiff to file an amended complaint as to his claim for employment discrimination. *See* Order, Dkt. No. 1-2 at 104-05 of 107. According to the Order, "Plaintiff must include in the amended

[4] The state court placed under seal the initial state court complaint to protect the privacy of the minors. *See* Order, Dkt. No. 1-2 at 101-02 of 107.

complaint that Plaintiff exhausted the administrative remedies under the [NMHRA], including all required procedures therein, which is a jurisdictional prerequisite to filing suit in the district court." *Id.* at 104.

Plaintiff filed his First Amended Complaint ("FAC") on December 22, 2025. FAC, Dkt. No. 1-2. Because Plaintiff did not enumerate or differentiate causes of action, it is unclear how many claims he attempted to assert, as discussed more *infra*. What is evident is that Plaintiff alleges a due process claim arising from the termination of his employment based on Defendants' failure to provide a hearing during which he could cross-examine witnesses and evidence. *See id.* ¶¶ 18-22, 25, 33, 37. He cites both Article II, Section 18, of the New Mexico Constitution and the Fourteenth Amendment to the United States Constitution. *Id.* ¶¶ 20-21. He also asserts a claim under the NMHRA for race discrimination. *See id.* ¶¶ 26, 34, 36. Plaintiff, who is not Native American, contends he is one of three employees within the School District accused of inappropriate touching of a female student, but the other two Native American employees were not terminated from employment. *See id.* ¶¶ 34, 36. Plaintiff alleges that he filed a complaint with the NMHRD alleging discrimination by the School District and that he exhausted the administrative remedies under the NMHRA. *Id.* ¶ 26.

Defendants removed the case on January 7, 2026, based on federal question jurisdiction. Notice 1-4, Dkt. No. 1. Defendants interpreted the FAC as raising federal claims for violation of Title IX, violation of due process under the Fourteenth Amendment, and potentially for violation of Title VII and 42 U.S.C. § 1983, and state claims for breach of contract, violation of the NMHRA, and claims that Defendants violated N.M. Stat. Ann. § 22-2-2. *See id.* at 3. Defendants also filed a motion to dismiss all claims. Defs.' Mot., Dkt. No. 7.

In his response to the motion to dismiss, Plaintiff states that his

> First Amended Complaint deals with three specific issues; deprivation of due process (property and liberty interests); discrimination in termination from employment; Plaintiff's termination from employment when the New Mexico Public Education Department investigated all of the same facts which gave rise to my termination and found no basis to discipline me whatsoever; and my termination from employment when two other similarly situated school employe[es] were never sanctioned to the extent of termination.

Pl.'s Resp. 1-2, ¶ 3, Dkt. No. 12. He further alleges that the School District and Superintendent Widner failed to ensure he was afforded his rights in the employment contract and other policies and procedures "to include the reliance of 34 CFR 106.45(b)(5)." *Id.* at 2-3, ¶ 6. Plaintiff argues that Defendants are not entitled to qualified immunity on his due process claim and that he exhausted his administrative remedies under the NMHRA. *See id.* at 3-8. He also states: "Defendants continue to bring issues dealing with the NM Tort Claims Act. Those issues were sufficiently presented to the State District Judge in Grants and dealt with. They should not be an issue to address before this Court." *Id.* at 8. Defendants replied, and this matter is now ready for decision. *See* Defs.' Reply, Dkt. No. 14.

## III. STANDARD

When reviewing a complaint under Rule 12(b)(6), the court must accept all well-pleaded allegations as true and construe them in a light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court, however, will not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or a formulaic recitation of the elements devoid of facts, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the plaintiff must allege facts stating a claim to relief that is plausible on its face. *Id.* Plausibility means more than a "sheer possibility." *Id.*

If on a motion to dismiss matters outside the pleadings are presented to and considered by the court, the motion generally must be treated as one for summary judgment. Fed. R. Civ. P.

12(d). No conversion is required, however, when the court considers documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

## IV. ANALYSIS

### A. Court will dismiss federal law claims.

The first issue is which federal claims Plaintiff asserted in his First Amended Complaint and which claims remain. Plaintiff has clearly asserted a § 1983 due process claim. The Court will thus begin its analysis with the Fourteenth Amendment and then consider whether Plaintiff brought and plausibly stated claims under Title VII and Title IX.

#### 1. Due process claim should be dismissed for failure to state claim and based on qualified immunity.

Defendants move for qualified immunity because Plaintiff failed to plausibly allege that his constitutional due process rights were violated. Mot. 8, Dkt. No. 7. According to Defendants, the pre-termination process provided to Plaintiff satisfied due process as he had notice of the charges, an explanation of the employer's evidence, and a chance to provide his side of the story. *Id.* at 17-20. No more is required, they say, because he had considerable post-termination remedies available to him of which he declined to avail himself. *Id.*[5] Plaintiff insists that Defendants'

[5] Defendants also argue that Plaintiff cannot state a due process claim based on his suspension. According to Defendants, Plaintiff has not alleged that he was suspended without pay and a suspension with pay does not violate an employee's due process right. *See* Mot. 17-18, Dkt. No. 7. Indeed, the Tenth Circuit has held that a suspension with pay does "not invade any recognized property interest." *Pitts v. Bd. of Educ.*, 869 F.2d 555, 556 (10th Cir. 1989). Plaintiff has not alleged in his FAC that he was suspended without pay and did not refute Defendants' authority that a suspension with pay does not violate due process. Plaintiff has thus waived the claim. *See United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996), *modified in part on reh'g*, 88 F.3d 897 (10th Cir. 1996) (finding waiver where party failed "to make any argument or cite any authority to support his assertion"). Given *Pitts* and Plaintiff's waiver of a due process claim based on his suspension, the Court will limit its analysis to Plaintiff's due process claim arising from his termination of employment.

rejection of his several requests for a hearing and the opportunity to present and cross-examine evidence and witnesses violates his due process rights. *See* Pl's Resp. 3, ¶ 7, Dkt. No. 12; FAC ¶¶ 5, 9, Dkt. No. 1-2. He additionally argues that his termination was unlawful as it contradicted the NMPED's "no prosecution" decision concerning his teaching license. *See* FAC ¶¶ 28-33, Dkt. No. 1-2.

To defeat a qualified immunity defense at the motion to dismiss stage, a "plaintiff 'must allege facts sufficient to show (assuming they are true) that the [1] defendant plausibly violated their constitutional rights, and that [2] those rights were clearly established at the time.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). "Courts may address these two inquiries in any order." *Id.* A right is "clearly established" where there is on-point Supreme Court or Tenth Circuit authority establishing the unlawfulness of the conduct, the "clearly established weight of authority from other courts" provides fair warning the conduct is unlawful, or in the extreme circumstance that the conduct is so apparently unconstitutional that it applies "with obvious clarity." *Id.* (internal quotations omitted).

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A claim for a violation of due process under color of state law in the employment context is cognizable under 42 U.S.C. § 1983. *See Riggins v. Goodman*, 572 F.3d 1101, 1106-08 (10th Cir. 2009). To determine whether a defendant denied the plaintiff procedural due process, the court "must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Id.* at

1108 (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004)). Defendants do not contest the first step, so the only question is what process was due.

Before someone can be deprived of life, liberty, or property, the Due Process Clause guarantees notice and an opportunity to be heard appropriate to the nature of the case. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). A government employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before his employment is terminated. *Id.* at 546. *See also Riggins*, 572 F.3d at 1108. The pre-termination hearing "need not be elaborate." *Loudermill*, 470 U.S. at 545. Where post-termination proceedings are available, the pre-termination hearing "should be an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46. Thus, a "full evidentiary hearing is not required prior to an adverse employment action." *Riggins*, 572 F.3d at 1108 (quoting *West v. Grand County*, 967 F.2d 362, 367 (10th Cir. 1992)).

As Plaintiff acknowledges in his amended complaint, in early March 2023 he was contacted by an investigator about the allegations of the two students, and he voluntarily participated in an interview with the investigator and presented his side of the story. *See* FAC ¶¶ 4, 6, Dkt. No. 1-2. Although Plaintiff in his response does not dispute that he received notice of the charges and a chance to dispute them to the investigator, he argues that the pre-termination process was merely an investigation whereas he was entitled to a hearing. Plaintiff asserts that he was entitled to cross-examine witnesses and present evidence pre-termination. But the requisite hearing in the pre-termination context is not a full-blown evidentiary hearing; instead, it is a chance for the employee to tell his version of events and offer a defense against the charges, which

indisputably occurred here. While cross-examination may generally be a requirement for due process at a *post*-termination hearing, it is not generally required in a *pre*-termination hearing, particularly where post-termination procedures provide for an evidentiary hearing. *See Williamson v. City of Edmond*, 201 F.3d 450, 1999 WL 1206645, at *6 n.6 (10th Cir. Dec. 16, 1999) (unpublished decision).

Defendants point to Plaintiff's allegation that he was a "school employee" entitled to the protections of the New Mexico School Personnel Act ("SPA"), including termination only for just cause. *See* FAC ¶ 24, Dkt. No. 1-2. Defendants argue that the SPA provides constitutionally adequate post-termination procedures that satisfy due process. In his response, Plaintiff does not dispute that he fell within the scope of the SPA. Nor does he contest that the SPA sets forth comprehensive post-termination administrative procedures and remedies, including the right to an evidentiary hearing, for a licensed school employee to contest a decision to terminate an employee for just cause. *See* N.M. Stat. Ann. §§ 22-10A-24 and 22-10A-25 (2021).

Indeed, under the SPA, a licensed school employee may request an opportunity to make a statement to the school board to oppose the decision to terminate him by submitting a written request to the superintendent within five working days from the date of service of the written termination notice. N.M. Stat. Ann. § 22-10A-24(C). If the employee requests in writing the reasons for his termination, the superintendent must respond within five working days from the date the employee requested a meeting. *See id.* If the employee replies in writing within 10 days with the reasons and facts for why his termination was made without just cause, the school board must hear the employee's contentions. *See id.* § 22-10A-24(E), (F). The employee may have a representative with him. *Id.* At the discharge hearing, the "governing authority shall permit either party to call, examine and cross-examine witnesses and to introduce documentary evidence." N.M.

Stat. Ann. § 22-10A-27(H). An aggrieved employee may appeal the decision to an arbitrator for a de novo hearing with the right to counsel. N.M. Stat. Ann. § 22-10A-25(A), (D). At the hearing, "the independent arbitrator shall permit either party to call and examine witnesses, cross-examine witnesses and introduce exhibits." *Id.* § 22-10A-25(I). The arbitrator's written decision is final and non-appealable, except when "the decision was procured by corruption, fraud, deception or collusion, in which case it shall be appealed to the district court[.]" *Id.* § 22-10A-25(P).

Plaintiff received a notice of termination letter from Superintendent Widner, informing him of his rights under N.M. Stat. Ann. § 22-10A-24(C) to request an opportunity to make a statement to the Board of Education to contest the grounds for his termination. *See* FAC ¶ 27, Dkt. No. 1-2; Letter, Dkt. No. 1-2 at 57 of 107. Yet, Plaintiff does not allege that he availed himself of the post-termination procedures. Nor in his response does he refute Defendants' argument that he was notified of the post-termination remedies and failed to take advantage of them. Nor does he suggest that he was prevented by Defendants from accessing those procedures. Had his discharge hearing before the Board been unsuccessful, he could have appealed to an independent arbitrator. Before the arbitrator, he would have been entitled to another evidentiary hearing – with the right to cross-examine and present witnesses and evidence – to refute the basis for his termination under the SPA. Plaintiff's failure to take advantage of those procedures constitutes waiver of any challenge to the post-termination process. *See Pitts v. Bd. of Educ.*, 869 F.2d 555, 557 (10th Cir. 1989) (explaining that employee's knowing failure to take advantage of constitutionally adequate procedures under Kansas law resulted in him waiving right to challenge them; by waiving hearing, employee deprived school board of opportunity to provide him with due process and he gave up right to test correctness of board's decision). Plaintiff thus had access to meaningful, constitutionally adequate post-deprivation procedures.

Plaintiff relies on the out-of-circuit case of *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895 (8th Cir. 1994), in support of his argument that he had a right to cross-examine evidence and witnesses in a pre-termination hearing. In *Winegar*, a teacher brought a due process claim after he was suspended without pay for four days and forced to transfer to another school following an incident with a student in which, after the student hit the teacher causing him to fall, the teacher kicked and slapped the student, purportedly in self-defense. *See id.* at 897-98. Although the teacher was informed of the charges against him before his suspension and given a chance to tell his side of the story, the Eighth Circuit concluded that the lack of a meaningful opportunity to be heard after the initial suspension rendered the pre-deprivation procedures inadequate. *See id.* at 901. In contrast to *Loudermill* and this case, the post-deprivation proceedings in *Winegar* were meetings, rather than hearings, and he was not given an opportunity to cross-examine the witnesses who furnished statements or to present witnesses on his own behalf. *Id.*

Here, in contrast, the SPA provides a post-termination hearing in which the employee may call witnesses, introduce evidence, and cross-examine witnesses. The SPA's framework satisfies due process. *West v. San Jon Bd. Of Educ.*, 2003-NMCA-130, ¶ 11, 134 N.M. 498, 79 P.3d 842 ("Because the [SPA's] statutory framework provides for the opportunity to appeal the Board's decision to an independent arbitrator in a post-termination hearing, followed by meaningful district court review, due process does not require a neutral tribunal at the pre-termination stage…. Considered together, the Act's pre- and post-termination procedures comport with due process requirements."). *Winegar* is therefore distinguishable.

Given the extensive post-termination process and hearings provided by the SPA, the pre-termination proceedings Plaintiff received (notice and a chance to tell his version of the story) satisfy due process. *Cf. Loudermill*, 470 U.S. at 547-48 ("We conclude that all the process that is

due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute."); *Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021) (concluding employee was afforded sufficient pre-deprivation process where he was informed in meeting with superiors that his rank and pay would be reduced and he would be reassigned duties and superior later provided his counsel letter rejecting employee's grievance and giving reason); *Riggins*, 572 F.3d at 1108-09 (holding that written notice of charges, explanation of evidence, and opportunity to tell plaintiff's side of story prior to termination of employment satisfied pre-termination due process); *Powell v. Mikulecky*, 891 F.2d 1454, 1458-62 (10th Cir. 1989) (holding that informal conversation with supervisor who gave verbal notice of charge against employee and asked him questions with an opportunity to respond satisfied pretermination hearing requirement where post-termination evidentiary hearing was available). Plaintiff was not entitled to cross-examine witnesses in a pre-termination hearing, and Defendants did not deny Plaintiff due process by not granting his requests for a pre-termination evidentiary hearing.

Finally, Plaintiff argues that he was denied due process when Defendants terminated him despite the NMPED's binding, superseding finding of "NO Prosecution." *See* FAC ¶¶ 28-33, Dkt. No. 1-2. In support, he cites N.M. Stat. Ann. § 22-2-1, which provides that the NMPED secretary "is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law." N.M. Stat. Ann. § 22-2-1(A). Plaintiff also relies on § 22-2-2, contending that it "establishes the Department's authority as the final arbiter in education disputes and confirms that its determinations supersede contrary local findings." FAC ¶ 32, Dkt. No. 1-2 at 97 of 107. *See also* Pl.'s Resp. 9, ¶ 22, Dkt. No. 12. Plaintiff, however, reads too much into § 22-2-1 and § 22-2-2. While § 22-2-2(K) gives the NMPED authority to deny, suspend or

revoke a teacher's license for incompetency, moral turpitude, or any other good and just cause, neither § 22-2-1 nor § 22-2-2 suggest that NMPED's decisions on licensure supersede any findings or conclusions regarding the termination of an employee by a school board. Rather, the local superintendent has authority to "employ, … terminate or discharge all employees of the school district." N.M. Stat. Ann. § 22-5-14(B)(3). The statutes cited by Plaintiff do not indicate that NMPED has final approval over personnel decisions made by school boards. Moreover, the School Personnel Act does not provide for appeal to the NMPED of an adverse employment decision. *See* N.M. Stat. Ann. §§ 22-10A-24 to -28. The licensure decision was a separate matter. Plaintiff did not state a due process claim arising from Defendants' failure to deem the NMPED decision binding.

For all the foregoing reasons, the Court will dismiss Plaintiff's due process claim brought under the Fourteenth Amendment as to all Defendants for failure to state a plausible claim.[6] Alternatively, given the aforementioned case law, the individual Defendants are entitled to qualified immunity because Plaintiff failed to show that clearly established law gave them fair notice that their actions were unconstitutional.[7]

**2. Plaintiff did not assert Title VII claim, and to extent he did initially, Court will dismiss it based on waiver.**

Defendants construe Plaintiff's FAC as also potentially asserting a Title VII claim. While Plaintiff asserted a reverse discrimination claim in his FAC, he does not refer to Title VII. In his

---

[6] Plaintiff has offered no arguments or authority that the Court should treat his due process claim under the New Mexico Constitution differently from his Fourteenth Amendment claim. Nevertheless, because the Court declines to exercise supplemental jurisdiction over the state law claims, the Court will leave resolution of the due process claim brought under the New Mexico Constitution to the state court. *See infra*.

[7] Plaintiff confirmed in his response that he is suing the individual Board members in their official capacity only. *See* Resp. 2, ¶ 5, Dkt. No. 12. Given the Court's resolution of the merits of the due process claim against all Defendants in all capacities, it need not consider Defendants' additional arguments concerning individual liability and duplication of claims.

response, Plaintiff failed to defend or provide any argument in support of a Title VII claim. Rather, his reverse discrimination claim is limited to the NMHRA. The Court thus finds that Plaintiff has not asserted a Title VII claim, and to the extent he did, the Court dismisses it for failure to come forward with arguments or authority in support of the claim. *See United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996), *modified in part on reh'g*, 88 F.3d 897 (10th Cir. 1996) (finding waiver where party failed "to make any argument or cite any authority to support his assertion"); *Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. Feb. 6, 2003) (concluding that, by failing to raise issue in initial response to motion to dismiss, petitioner waived argument).

**3. Plaintiff did not assert Title IX claim, and to extent he did, Court will dismiss it.**

Unlike Title VII, Plaintiff mentions Title IX in his FAC: Plaintiff received a "10 Day Letter" in December 2023 containing the School District's policies "with reference to Title IX investigations and more specifically 34 C.F.R. 106.45(b)(5)." FAC ¶ 15, Dkt. No. 1-2 at 94 of 107. Plaintiff asserts that Defendants failed to provide him with an equal opportunity to present witnesses, an equal opportunity to inspect and review evidence obtained during the investigation, and an investigative report summarizing the evidence at least 10 days prior to a hearing. *See id.* ¶¶ 15-17. In his response, Plaintiff did not list Title IX as a separate issue apart from his due process claim. *See* Pl.'s Resp. 1-2, ¶ 3, Dkt. No. 12. He did, however, argue that Defendants failed to ensure he was afforded his rights as contained in "policies and procedures in place to include the reliance of 34 CFR 106.45(b)(5) which the[y] provided to me and allegedly relied on when handling my disciplinary matter." *Id.* at 2-3, ¶ 6.

The Court is unconvinced Plaintiff has asserted a Title IX claim; rather, he appears to be citing procedures that were not followed as a foundation for his due process claim. Nevertheless, to the extent he attempted to assert a Title IX claim in the FAC, the only potentially applicable

authority he cites in support is 34 C.F.R. §106.45(b)(5). That provision says that a grievance procedure must

> Require the recipient to take reasonable steps to protect the privacy of the parties and witnesses during the pendency of a recipient's grievance procedures, provided that the steps do not restrict the ability of the parties to: obtain and present evidence, including by speaking to witnesses, subject to § 106.71; consult with their family members, confidential resources, or advisors; or otherwise prepare for or participate in the grievance procedures.

34 C.F.R. § 106.45(b)(5). Section 106.45(b)(5) does not establish that Plaintiff is entitled under Title IX to a pre-termination hearing to cross-examine the minor accusers. Nor does it indicate a plausible claim may be established for violation of Title IX where, as here, Plaintiff received notice and a chance to tell his version of events to the investigator and was entitled to additional, extensive procedural protections under the SPA, including discovery and a post-termination evidentiary hearing, of which he did not avail himself. To the extent Plaintiff asserts a Title IX claim, the Court dismisses it based on waiver and for failure to state a claim. *See Hardwell*, 80 F.3d at 1492.

**B. Court will remand state law claims.**

Having determined that all federal claims should be dismissed, the Court notes that only state law claims remain. Under 28 U.S.C. § 1367(c), the "district courts may decline to exercise supplemental jurisdiction over a claim ... if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Section 1367 grants the court discretion to dismiss supplemental state law claims when it has dismissed the federal claims supporting its original jurisdiction. *See Tonkovich v. Kansas Bd. of Regents*, 254 F.3d 941, 945 (10th Cir.2001). "When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)) (emphasis added). Indeed, federal courts must avoid rendering "[n]eedless

decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Factors that a district court should consider in deciding whether to exercise pendant jurisdiction include the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness. *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir.1995) (quoting *Thatcher Enter. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

This case is in its early stages in federal court. The claims left to be resolved are issues of state law that are best resolved by the state courts of New Mexico, particularly the NMHRA exhaustion issue. After all, the state court issued the order initially dismissing the claim with leave to refile with specific instructions for asserting exhaustion. That court should decide whether Plaintiff adhered to its directive and met the jurisdictional exhaustion requirements. The parties will not be prejudiced by this Court declining to exercise supplemental jurisdiction and litigation resuming in state court. For reasons of judicial comity and principles of federalism, this Court declines to exercise supplemental jurisdiction and will remand the case to the Thirteenth Judicial District Court of New Mexico.

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss All Claims of Plaintiff's First Amended Complaint* (**Dkt. No. 7**) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' request to dismiss Plaintiff's claims arising under federal law is **GRANTED**.
2. Defendants' request to dismiss Plaintiff's claims arising under state law is **DENIED**.

3. The Court **REMANDS** the remaining state law claims to the Thirteenth Judicial District Court, Cibola County, New Mexico.

**SO ORDERED.**

**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**
***Presiding by Consent***